Good morning, Your Honours. Randy Kovan for Appellant Danell Pratt. I would like to reserve a couple minutes for rebuttal, please. May it please the Court, I'd like to focus today on our Strickland and Chronic claims and I'd like to begin by talking about Section 2254. The District Court correctly found that our Claim 5, the Chronic claim, was inadvertently overlooked by the State Habeas Court and thus is not governed by Section 2254. Of course, we agree with that. The District Court, however, incorrectly found that Claim 4, our third Strickland claim, was not inadvertently overlooked and therefore is governed by Section 2254. We disagree with that, Your Honour. The record doesn't support the District Court's conclusion about Claim 4 because Claims 4 and 5, as the Court knows, were on the attachment form. The State Habeas Court twice listed Claims 1 and 2, first in listing the claims that Mr. Pratt was raising, only listed Claims 1 and 2, which were in the form petition, and then again in making its ruling, only addressed Claims 1 and 2, never mentioned Claim — well, it's Claim 4 here. It was Strickland Claim 3 in Section 2254. Roberts, can you, instead of referring to the claims by numbers, just tell us which — what's the claim you want us to focus on at the moment? Sure. It's the Strickland claim that trial counsel failed to investigate. Right. And present evidence that — Dulles is solid. Yes. Okay. So let's assume that there was deficient performance, and let's assume we review Prejudice de novo. Let's hear your case on why there was prejudice, because I, frankly, just did not see how that — even under de novo review, we would find prejudice for the — from that one error. Just from that specific claim, because if — Well, that's what I'm asking you. Is that what you want us to focus on? If that's the claim you want us to focus on, take those assumptions, and let's hear the best case for why there was prejudice under de novo review. Well, first of all, of course, in evaluating ineffective assistance of counsel claims, we do look at them cumulatively. We consider the, you know, counsel's overall performance. So if you isolate just that — excuse me. But let's assume you lose on the other two, okay? I apologize. Let's assume that you don't prevail on the other two. And you only want to talk about that particular case. I just want to hear your best case for why. Even if we had de novo review on prejudice, why was there prejudice from that? Well, Your Honor, this — this was a case of mistaken identity, as the Court knows. And there was some vulnerability. It was not an airtight case. The complaining witnesses initially identified Mr. Pratt's brother, Linnell. They only identified Mr. Pratt when it appeared that Linnell had an alibi. It's a little unclear exactly when they were told, but initially they had identified Linnell. Had evidence been presented that Mr. Gonzalez had told police officers that the twin he saw shortly before the shooting — Short — how long before? I believe — I thought it was like a half hour, 45 minutes. I believe it was a half hour. So it's not shortly. That's what I'm saying. I don't even think Gonzalez's I.D. actually ends up being that useful, given that he ended up conceding. I can't really tell these two apart anyway, right? So — but it's 45 minutes or a half an hour before, and I don't even understand why the inference is that that person he ran into is necessarily the shooter. Well, Your Honor is correct that it's not a very strong inference, but that is what the State argued with that evidence, that the identifications by Carmen and Andres Gonzalez of the twin that they saw at some time before the shooting, you know, approximately a half hour, 45 minutes, that they believed that twin was Mr. Pratt because he was the serious, quiet twin, or the bad twin, who didn't speak, and that's how they distinguished between the two twins. So, of course, there's the other ineffective assistance claim that there was ample testimony available from multiple relatives of Mr. Pratt that they got it wrong. These neighbors, though they'd lived there for many years, there was evidence that it was very difficult to tell Mr. Pratt and his brother apart. So between these two items of evidence, you know, we can focus on the parole issue. Well, if that person that Mr. Gonzalez saw half an hour, say, before the shooting, if that indeed had been Linnell, and there is only evidence, I mean, there wasn't evidence that there were two people. There was one person that was seen before the shooting, and then Carmen Gonzalez also testified she saw one person hurrying down the street and back into the Pratt house afterwards. So there was no evidence, other than Mr. Pratt's testimony, that the two twins were around that night. So that's certainly possible that whoever, you know, Andres and Carmen saw before the fact, it is possible that that was not the shooter anyway. But that is evidence the state presented and could have been rebutted. The defense counsel, had he properly investigated, could have presented persuasive evidence. I guess I think you need maybe to address the ineffective assistance as to the manufactured alibi. Because it seems to me if that stands, I just don't, this cannot possibly be prejudicial in light of the evidence that, because we have both the letter and the tape phone calls, don't we? Is this, I hope I'm not getting this case confused with another one. There was evidence that Mr. Pratt did attempt to manufacture an alibi, absolutely. And his explanation was that his brother had told him he had an alibi and that Mr. Pratt better get an alibi. And that he didn't take that entirely seriously, even after the shooting, until he was arrested. And then once he was arrested and his brother was not coming forward to exonerate him, that at that point he did try to manufacture an alibi because he didn't have a good alibi. And the reason for that is because he was with his grandmother who had Alzheimer's and then passed away. So there is that evidence, but I do think a juror could have had a reasonable doubt whether Mr. Pratt was the twin who committed the shooting, even though he tried to manufacture an alibi. I think it is possible, in fact I think it's likely, had trial counsel not manufactured a false theory of defense. Can I stop you there? Because your theory has been that this was all, I can't remember his name now, but the one... Trial counsel. Yeah, exactly. But the letter was written when your client had the other lawyer, right? When he had what, Your Honor?  You know what I'm saying? I guess I don't see why is it, I don't understand why the inference is strong at all that it was trial counsel who cooked up this whole scheme when in fact your client had already been apparently in the planning stages before he even retained that trial lawyer, right? Well, he did attempt to manufacture an alibi, certainly. I don't know that, I don't recall from the letter and the phone calls any evidence that the alibi he was attempting to manufacture coincided with the opening statement that Mr. Grimm gave. And I think it's a question of credibility, Your Honor, as to, first of all, who cooked up this defense theory. Mr. Pratt's declaration and his consistent report since I took the appeal in state court was that it was a complete surprise to him. He never wanted to testify. He urged Mr. Grimm to defend the case just by attacking the identifications and not putting him on the stand and that the identifications were vulnerable. And he, after the opening statement, he, that Mr. Grimm told him to study it and testify accordingly. Now, you know, when a client tells me that his trial lawyer lied or, you know, broke the law or did something like that, of course we can't just take these things at face value. And in many cases we might find that there just isn't, you know, anything to support it and that defense counsel is credible. In this case, as the court knows, this may be the least credible defense trial attorney I've come across in 25 years. And there is authority for considering the trial lawyer's state bar discipline record in evaluating whether he's credible in positing that he, excuse me, that he had a legitimate tactical reason. In Sanders v. Ratelli, which was actually a rather similar case, this court found ineffective assistance based on the trial lawyer's failure to investigate and present evidence that the defendant's brother was, in fact, the shooter. And there was an issue of presenting relatives' testimony that it was, in fact, the brother that was the shooter. And this court looked favorably on that proposed testimony, that these relatives, you know, would support the defense theory that it was the brother, and also that the defense counsel's disbarment and state bar discipline record showed a course of conduct of failing to adequately investigate and represent clients and also failure to observe the ethical rules for attorneys. And that's very similar to what happened in this case. We have a state bar court here that described this trial counsel as utterly blind to conflicts of interest and ethical norms of an attorney, and that they found he had no credibility. He was very willing to use deceptive methods to accomplish his objectives. And then there's my declaration from my conversations with him from one day to the next, when I first asked him about the opening statement transcript, and he said, no, he didn't recall giving it to Mr. Pratt, and he couldn't imagine why he would. And I asked him, well, do you have any idea how he might have gotten hold of it? Because he clearly didn't get it from me or from the appellate record. And the very next day, he called me back and started telling me this long story about a former client, and the gist of it was that ever since that former client testified inconsistently with his opening statement, that that became his general practice to provide his clients. I'm just going to take another run at explaining why, in light of the letter, and the letter which predates this lawyer's retention and the taped phone calls, how is your client's account of, oh, my God, I was sitting there, I heard this opening statement, and I couldn't believe that he was talking about this alibi when, in fact, he's been engaged in planning for some time on how to put on this false alibi. Well, but it wasn't just the alibi, Your Honor. We don't dispute that Mr. Pratt tried to fabricate a false alibi, but there's no evidence that he was involved in fabricating this whole defense theory that he saw his brother at his grandmother's house, his brother said he was going to go shoot these kids, and you better get an alibi. That was not part of the letter or the phone calls. I think what we've got is a credibility issue here. Who's more believable, Mr. Pratt or Pratt? What if they're both not credible? Excuse me, Your Honor? What if they're both not credible? I mean, I appreciate your remarks about counsel, but your client admitted to falsely trying to create a false alibi, and he testified he purged himself under oath. That's right, Your Honor. But one can imagine the position a criminal defendant might find himself in, taking the factual allegations as true, because Mr. Pratt has never been given an opportunity to prove these allegations. Taking them as true, one can imagine that if Mr. Pratt is telling the truth, and his trial attorney unexpectedly, without any notice to him, got up and told this false story, and had been trying to persuade him, you have to testify, you have to testify, and even trying to get his wife to testify falsely, that Mr. Pratt was persuaded by counsel that he had no choice now. He had to testify. Once trial counsel gave that story, he had to testify, and he had to testify consistently. And, you know, it is a difficult proposition when the client is admitting that he testified falsely. He's certainly not entirely innocent. However, the specter of a member of the bar, of a trial attorney, first of all, failing to properly advise his client about whether or not to testify, the risks and benefits, the advantages and disadvantages, when he had these prejudicial prior offenses, and there was all this evidence that his family was involved in the drug trade, and involved in gangs, including a gang called the Taliban, you know, a competent attorney, I think, would have discouraged Mr. Pratt from testifying, and the fact that Mr. Grimm really didn't advise him at all, didn't really give him a choice. He tried to persuade him. Mr. Pratt continued to resist. He didn't want to testify. And then Mr. Grimm forced his hand. Once Mr. Grimm gave that opening statement, and then told Mr. Pratt, well, you have to testify consistently, with the opening statement, or we lose. That's it. That he was coerced to do as his lawyer told him. The lawyer is the guide. The lawyer is the one steering the ship, making the tactical decisions, and to the extent there are decisions for the defendant to make, like whether or not to testify, it's up to the lawyer to give competent, ethical advice. And the fact that it's not just that he advised Mr. Pratt to testify falsely, or encouraged him, but he actually forced his hand. And for an indigent defendant who had no more money to hire another lawyer, you know, had I had an opportunity to advise him at that point, I would have advised him to promptly tell the trial court what had happened, and request appointed counsel if necessary. But he didn't have an opportunity for independent legal advice. He was trapped. All of his family members report that they felt trapped. They were horrified to see what was happening with the case, and they didn't feel they had any choice. Thank you, Counsel. I see my time's up. Thank you, Your Honors. May it please the Court, Bruce Ortega for the State. When we discuss the Strickland allegation of the false testimony or the coerced direct examination, that's under the AADPA. So our issue is whether the State court could have reasonably rejected that allegation as it did for a lack of prejudice. And what do we have? The State court takes the Petitioner's allegations as true. And then decides, if I take them as true, does it state a prima facie case? And I argue that the State court could have reasonably found, okay, we'll accept Mr. Pratt's allegation that his attorney gave this false opening statement, had it in the opening statement, and then coerced him to testify consistently with that opening statement. As a Strickland allegation — May I interrupt you there, please, just for a second? Because I'm looking at the State court order, and it appears to me that you are correct as to prejudice in terms of the Strickland allegations about the testimony of family members. But it appears to me that the State court rejected the coerced testimony as a tactical decision. Very — I think that's — Let me just read it so we're on the same page. Sure. However, Petitioner's contentions show no more than tactical decisions where Petitioner now admits to testifying falsely in an attempt to provide a version of events consistent with his counsel's rendition of facts set forth in the opening statement. And it goes on to say, Petitioner, who was not believed by the jury, fails to show a reasonable probability that the testimony of his family members would have dissuaded the jury from believing eyewitness testimony identifying as the perpetrator. So it seems to me that there were independent reasons in the State court decision. Okay. I respectfully disagree. I thought the trial court was holistically. But I'll — let's assume you're correct. Well, I mean, just for the sake of argument, and I'll re-read it carefully. And I'm certainly — For the sake of — let's go — let's focus on — Sure. How can it ever be a reasonable tactical decision to coerce false testimony? And I say that in the brief. I say it was an inartful statement by the trial court. The State of California would never stand up here and say that we should evaluate for reasonableness counsel's unethical behavior. But let's even assume this Court were to review prejudice from the — that Strickland allegation de novo. I just want to make sure we're in agreement that the so-called Strickland tactical haven, safe haven, if you will, means that it cannot be invoked for counsel who is coercing false testimony. Correct. Or making false statements to the jury. Correct. Okay. So now we're just down to prejudice. And we — Whether it's — whether the State court would defer to it or whether it's just analysis separate. Correct. And so where's the — in my view, Petitioner never makes a claim of prejudice from that allegation. Everything gets mixed up, including the chronic claim. Here, we have a Petitioner who fabricated alibis twice. Not just in the letter where he gloats to his friend. They ID'd the wrong guy. I went to the law library. It's double jeopardy. We're both going to get off. Then the phone calls. Given that evidence, given the ID evidence, which I submit is stronger than Petitioner believes it to be, there's no reasonable probability that this defendant would have received a more favorable verdict had what happened been what he wants to happen. That is, I don't testify and we only attack the IDs. And that's what happened. This lawyer attempted to attack those IDs. Now, with respect to the chronic claim, and I said this in the brief as well, you can't read this record and not cringe at a lot of times. As the district court said, as I said, he wasn't particularly skillful. He made lots of mistakes. But this isn't a chronic case. This isn't a case where Petitioner was without counsel, presence of counsel, at a critical stage of the proceeding. And this isn't a case where Petitioner did not have, you know, the adversary — excuse me, counsel challenged the prosecution. This isn't the absence of a test of the adversarial process. He gave powerful closing argument as best he could with the IDs. He cross-examined the government witnesses. In fact, it was Mr. Grimm, in his cross-examination of Alfredo, who elicited the evidence that Alfredo was 100 percent certain, the first time he ID'd from the photos, that it was Linnell. That wasn't from the prosecution. That was from the defense. So this wasn't a lawyer who was sitting on his hands. He wasn't a lawyer who slept through the trial or conceded guilt, as in this court's chronic cases previously. And I acknowledge chronic is a de novo review here. The State court did not evaluate it, so this court does have de novo review. I can't go to the AEDPA. I was thinking of that one, the first case, when Justice Watford said, well, it's just a draw. I like draws because usually we win. Here I don't have that. And I acknowledge it wasn't a great performance, but it wasn't chronic, and the Strickland allegations fail for prejudice, unless the court has any questions I'd submit. Thank you, Counsel. We'll give you two minutes for rebuttal. Thank you, Your Honor. I agree that the prejudice prong on the claim involving the opening statement and false testimony is de novo for the reason the court states and also for another reason. If the third Strickland claim, which is the one involving Linnell being on parole, if that one is de novo and if a Strickland claim, the prejudice prong of a Strickland claim, includes consideration of cumulative prejudice, then on that basis also the prejudice from the fabrication and the false testimony is reviewed de novo in terms of cumulative prejudice on the one that is clearly de novo, which is the one involving the parole evidence. I would like to speak very briefly about the conflict of interest cases. I think in addition to the idea that it's a complete denial of counsel to have an attorney who's not even trying to obey the law or the rules, who's just blatantly falsifying evidence and argument, in addition to that being just not the counsel that's contemplated by the Sixth Amendment, to basically have a criminal as your lawyer, in addition there are those lower federal court cases identifying it as a conflict of interest when the attorney becomes embroiled in the case in such a way that to protect himself, he can't protect his client as he's supposed to. There are two cases in particular that were close to the facts of our case, one where the lawyer and client attempted to obstruct evidence by persuading a co-defendant not to accept a plea offer and to plead not guilty, and another one where the lawyer and client were both implicated in the destruction of drug evidence. Now after Mickens, you know, it's not clearly established that the presumption of prejudice from Sullivan applies in context outside of the concurrent representation situation, but that's just for the presumption of prejudice. It is still a conflict of interest for the lawyer to become embroiled in the illegality that the client is charged with. In conclusion, I just want to say again that the issues in this case depend largely on the credibility of the witnesses. Mr. Pratt does have some credibility problems, but his attorney certainly has some as well, and there's never been a hearing. I don't think the district court could properly deny the petition without an evidentiary hearing. Thank you, counsel. Thank you. The case has started to be submitted for decision and will be in recess for the morning. Thank you.
judges: Thomas, Rawlinson, Watford